IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

09cr858 (JAP)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. |
| | : | |
| v. | : | 18 U.S.C. § 371 |
| | : | 18 U.S.C. § 287 |
| BENJAMIN PENA, | : | 18 U.S.C. § 1349 |
| ROBERT Z. RUBECK and | : | 18 U.S.C. § 1341 |
| TAMARA FRANKEL, | : | 18 U.S.C. § 2 |
| | : | 18 U.S.C. § 982 |
| Defendants. | : | |
| | : | **INDICTMENT** |

RECEIVED NOV 18 2009 AT 8:30 WILLIAM T. WALSH, CLERK

The Grand Jury, in and for the District of New Jersey, sitting at Camden, charges:

### General Allegations

At all times relevant to this Indictment:

1. The Americans with Disabilities Act ("ADA") required that each common carrier providing telephone voice transmission services provide Telecommunications Relay Services ("TRS") in the area in which it offered services so that deaf and hard of hearing individuals could communicate with hearing individuals "in a manner that is functionally equivalent to . . . voice communication services." A nationwide TRS program began in 1993. Video Relay Service ("VRS") was a specific type of TRS.

2. VRS was an online video translation service that allowed people with hearing disabilities to communicate with hearing individuals online through the use of interpreters and web cameras. A person with a hearing disability could communicate with a hearing person by contacting a VRS provider

through an audio and video internet connection. The VRS provider, in turn, employed a Video Interpreter ("VI") to view and interpret the hearing disabled person's signed conversation and relay the signed conversation orally to a hearing person. VRS also allowed a hearing person to initiate contact with a hearing disabled person through a VI.

3. TRS, including VRS, was funded by fees assessed by the Federal Communications Commission ("FCC") on all common carriers providing interstate telecommunications services. The fees were generally passed on to consumers through charges included in consumers' telephone bills. The fees were deposited in the TRS Fund.

4. The TRS Fund was established by the FCC in 1993 as the mechanism for collecting and disbursing TRS funds. The National Exchange Carrier Association ("NECA") was responsible for, among other things, administering the TRS Fund.

5. VRS providers were eligible to be reimbursed from the TRS Fund for their legitimate services. The TRS Fund reimbursed VRS providers at the rate of approximately $6.73 per minute (or approximately $403.80 per hour) for the first 50,000 minutes billed in any given month, approximately $6.46 per minute (approximately $387.60 per hour) for minutes 50,001 through 500,000, and approximately $6.26 per minute (approximately $375.60 per hour) for all minutes over 500,000.

**Defendants and Relevant Entities**

6.   NECA was a non-profit association that administered the TRS Fund. This function included collecting carriers' annual contributions, receiving claims for reimbursement from VRS providers and making payments on behalf of the FCC to VRS providers for these claims. NECA was headquartered in Whippany, New Jersey, in Morris County.

7.   VRS providers that were authorized by the FCC to receive payment for VRS would submit their monthly claims and requests for payment along with the required backup documentation to NECA and would be paid out of the TRS Fund, a function that the FCC contracted to NECA. NECA required that VRS providers include call detail records for each billed call, which included the date, time and call duration. NECA additionally requested that providers submit the originating phone number or IP address and the destination number with the call detail records. An IP address identifies the computer from which the caller is calling. Because VRS calls were made over the internet, the IP address of the caller was generally used as the identifier for record-keeping purposes.

8.   Company 1 was a certified VRS provider based in Flint, Michigan. Company 1 provided VRS through its own call centers and also contracted with outside entities to operate VRS call centers. The minutes from the contracted call centers were

3

billed by Company 1 to NECA with the payments for those calls divided between Company 1 and the contracted call center. In 2008, Company 1 was paid more than $38.7 million for VRS services purportedly provided by Company 1 and its contracted call centers.

9. Viable Communications, Inc. ("Viable") was a Delaware corporation established in 2005 and was headquartered in Rockville, Maryland. Viable operated call centers, or subcontracted to others the operation of call centers in, among other places: Miami Lakes, Florida; Kendall, Florida; Rockville, Maryland; Towson, Maryland; Baltimore, Maryland; Austin, Texas; New York, New York; Las Vegas, Nevada; Phoenix, Arizona; and Colonia, New Jersey, in Middlesex County. Viable was not a certified VRS provider that could bill directly to NECA. Instead, Viable billed NECA through Company 1. In 2008, Viable was responsible for more than half of the VRS minutes billed by Company 1.

10. Defendant BENJAMIN PENA was a "consultant" for Viable and assisted Viable in increasing the number of VRS minutes billed by Viable to NECA.

11. Defendant ROBERT Z. RUBECK was hired by Pena to assist in increasing the number of VRS minutes billed by Viable to NECA.

12.   Defendant TAMARA FRANKEL, the wife of RUBECK, was hired by PENA to assist in increasing the number of VRS minutes billed by Viable to NECA.

**COUNT 1**
**(Conspiracy to Defraud the United States and to Cause the Submission of False Claims: 18 U.S.C. § 371)**

13. The allegations contained in paragraphs 1 through 12 of this Indictment are repeated and realleged as if fully set forth herein.

14. From in or about February 2008 through in or about November 2008, the exact dates being unknown to the Grand Jury, in the District of New Jersey, and elsewhere, defendants

**BENJAMIN PENA,**
**ROBERT Z. RUBECK and**
**TAMARA FRANKEL,**

and others known and unknown to the Grand Jury, did willfully, that is with the intent of furthering the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other to defraud the United States and agencies thereof and to commit offenses against them, to wit:

(A) to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the United States Federal Communications Commission and its agents in their administration of the Telecommunications Relay Services Fund, in violation of Title 18, United States Code, Section 371;

(B) to defraud the United States of and concerning its right to have its officers and employees, and particularly the personnel and agents of the Federal Communications Commission,

6

free to transact the official business of the United States unhindered, unhampered, unobstructed and unimpaired by the exertion upon them of dishonest, corrupt, unlawful, improper and undue pressure and influence, in violation of Title 18, United States Code, Section 371; and

(C) to commit an offense against the United States by making and presenting to any department or agency of the United States, a false, fictitious, and fraudulent claim upon or against the United States, or any department or agency thereof, in violation of Title 18, United States Code, Section 287.

### The Object of the Conspiracy

15. It was an object of the conspiracy for defendants PENA, RUBECK and FRANKEL, and others, to unlawfully enrich themselves by submitting and causing the submission of false and fraudulent claims to NECA for reimbursement for VRS calls that the defendants knew to be false and fraudulent.

### Manner and Methods of the Conspiracy

16. The manner and methods by which defendants PENA, RUBECK and FRANKEL, and others, known and unknown to the Grand Jury, sought to accomplish the object of the conspiracy included, among others, the following:

17. Defendant PENA would provide VRS "consulting" services for Viable in return for the payment to PENA of approximately $250 per call hour that would be billed by Viable to NECA.

7

18. Defendant PENA would begin providing VRS services for Viable in or about February 2008.

19. Defendant PENA would hire defendants RUBECK and FRANKEL for the purpose of further generating illegitimate VRS minutes that would be billed to NECA and that would generate significant illicit revenue for RUBECK and Viable.

20. Defendant PENA would pay defendants RUBECK and FRANKEL in cash for making illegitimate VRS calls for the purpose of preventing authorities from uncovering the payments.

21. Defendants PENA, RUBECK and FRANKEL would make and cause the making of illegitimate VRS calls, often to phone numbers that had prerecorded messages, which were calls made for the sole purpose of generating illegitimate VRS minutes for which NECA would be billed.

22. Defendants PENA, RUBECK and FRANKEL would cause the submission of claims to NECA totaling approximately 200,000 VRS call minutes for the time period of in or about February 2008 through in or about November 2008, at a total cost of approximately $1.28 million to the TRS Fund, which would include the false and fraudulent run calls that they generated.

### Overt Acts

23. In furtherance of the conspiracy, and to accomplish its object, at least one of the conspirators committed, or caused to

be committed, in the District of New Jersey, and elsewhere, the following overt acts, among others:

24. On or about October 30, 2008, a VRS call of approximately 180 minute duration was made from IP address 75.172.138.14 to a podcast at (303) 590-3030, which call was submitted to NECA for reimbursement on or about November 14, 2008.

25. On or about November 3, 2008, a VRS call of approximately 133 minute duration was made from IP address 68.3.244.19 to a podcast at (303) 590-3030, which call was submitted to NECA for reimbursement on or about December 12, 2008.

26. On or about November 26, 2008, defendants PENA, RUBECK and FRANKEL caused the mailing of a package, via the United States Postal Service, to NECA in Whippany, New Jersey, in Morris County, that contained the call detail records that supported Company 1's request for payment for VRS services for October 2008. These records included call detail records for the fraudulent calls that the defendants generated in October 2008.

27. On or about January 20, 2009, defendants PENA, RUBECK and FRANKEL caused the mailing of a package, via UPS Express, to NECA in Whippany, New Jersey, in Morris County, that contained the call detail records that supported Company 1's request for payment for VRS services for November 2008. These records

included call detail records for the fraudulent calls that the defendants generated in November 2008.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-3
### (Submission of False Claims: 18 U.S.C. § 287 and 2)

28. The allegations contained in paragraphs 1 through 12 and 15 through 27 of this Indictment are repeated and realleged as if fully set forth herein.

29. On or about the dates enumerated below, in the District of New Jersey, and elsewhere, defendants

**BENJAMIN PENA,
ROBERT Z. RUBECK and
TAMARA FRANKEL,**

and others known and unknown to the Grand Jury, did make and present and cause the making and presenting to a person or officer in the civil, military, and naval service of the United States, and to a department or agency thereof, the following claims upon and against the United States, and a department or agency thereof, knowing such claims to be false, fictitious, and fraudulent:

| Count | Defendants | On or about Claim Date | Description of the Call |
|---|---|---|---|
| 2 | PENA, RUBECK and FRANKEL | 11/14/2008 | Approximately 180 minute duration VRS call from IP address 75.172.138.14 to a podcast at (303) 590-3030, made on or about October 30, 2008 |
| 3 | PENA, RUBECK and FRANKEL | 12/12/2008 | Approximately 133 minute duration VRS call from IP address 68.3.244.19 to a podcast at (303) 590-3030, made on or about November 3, 2008 |

In violation of Title 18, United States Code, Sections 287 and 2.

## COUNT 4
### (Conspiracy to Commit Mail Fraud: 18 U.S.C. § 1349)

30. The allegations contained in paragraphs 1 through 12 and 15 through 27 of this Indictment are repeated and realleged as if fully set forth herein.

31. From in or about February 2008 through in or about November 2008, the exact dates being unknown to the Grand Jury, in the District of New Jersey, and elsewhere, defendants

**BENJAMIN PENA,
ROBERT Z. RUBECK and
TAMARA FRANKEL,**

and others known and unknown to the Grand Jury, did willfully, that is with the intent of furthering the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other to commit an offense against the United States, that is, to violate Title 18, United States Code, Section 1341, by placing and causing to be placed in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or depositing and causing to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or causing to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 5-6
### (Mail Fraud: 18 U.S.C. §§ 1341 and 2)

32. The allegations contained in paragraphs 1 through 12 and 15 through 27 of this Indictment are repeated and realleged as if fully set forth herein.

33. On or about the respective dates shown below, each such date constituting a separate count of this Indictment, within the District of New Jersey, and elsewhere, defendants

**BENJAMIN PENA,
ROBERT Z. RUBECK and
TAMARA FRANKEL,**

and others known and unknown to the Grand Jury, for the purposes of executing the scheme and artifice to defraud described above and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, did knowingly: (a) place and cause to be placed in any post office and authorized depository for mail matter, any matter and thing whatever to be sent and delivered by the Postal Service; (b) deposit and cause to be deposited any matter and thing whatever to be sent and delivered by any private and interstate commercial carrier; and (c) cause to be delivered by mail and private and interstate commercial carrier any matter and thing whatever according to the direction thereon, the following:

| Count | Defendants | On or About Mailing Dates | Description of the Mailing |
|---|---|---|---|
| 5 | PENA, RUBECK and FRANKEL | 11/26/2008 | Package containing call detail records that supported Company 1's request for payment for VRS services for October 2008 delivered via the United States Postal Service to NECA in Whippany, New Jersey, Morris County |
| 6 | PENA, RUBECK and FRANKEL | 1/20/2009 | Package containing call detail records that supported Company 1's request for payment for VRS services for November 2008 delivered via UPS Express to NECA in Whippany, New Jersey, Morris County |

In violation of Title 18, United States Code, Sections 1341 and 2.

**CRIMINAL FORFEITURE**
**(18 U.S.C. § 982)**

34. The allegations contained in Counts 1-6 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, BENJAMIN PENA, ROBERT Z. RUBECK and TAMARA FRANKEL have an interest in pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

35. Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of BENJAMIN PENA, ROBERT Z. RUBECK and TAMARA FRANKEL for any of the offenses charged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense or any property real or personal which was involved in the offense or any property traceable to such property. Such forfeiture shall include, but not be limited to a money judgment in the amount of the gross proceeds of the fraud.

36. If the property described above as being subject to forfeiture, as a result of any act or omission of BENJAMIN PENA, ROBERT Z. RUBECK and TAMARA FRANKEL ,

   (a)   cannot be located upon the exercise of due diligence;
   (b)   has been transferred or sold to or deposited with a third person;
   (c)   has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as made applicable through Title 18, United States Code, Section 928(b)(1), to seek forfeiture of any other property of BENJAMIN PENA, ROBERT Z. RUBECK and TAMARA FRANKEL up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

STEVEN A. TYRRELL
CHIEF, FRAUD SECTION

Hank Bond Walther
Assistant Chief, Fraud Section

Brigham Cannon
Trial Attorney, Fraud Section