**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**


UNITED STATES OF AMERICA     :     Hon. JOEL A. PISANO
                             :
v.                           :     Criminal No. 09-858 (JAP)
                             :
BENJAMIN PENA                :
                             :
                             :


_____
_____

**BRIEF IN SUPPORT OF DEFENDANT**
**BENJAMIN PENA'S OMNIBUS MOTIONS**
_____
_____



JOHN M. HOLLIDAY, ESQUIRE
2273 State Hwy. 33, Suite 207
Trenton, New Jersey 08690
Phone No. (609) 587-1010
Attorney for Defendant
Benjamin Pena

## TABLE OF CONTENTS

PROCEDURAL HISTORY.................................................1

STATEMENT OF FACTS................................................2

LEGAL ARGUMENT....................................................4

     POINT I..........................................................4

          THE GOVERNMENT SHOULD BE COMPELLED TO PROVIDE
          DEFENDANT WITH ALL MATERIAL WHICH WOULD
          EXCULPATE HIM OR MITIGATE HIS CULPABILITY

     POINT II.........................................................8

          THE DEFENDANT SHOULD BE ALLOWED EARLY ACCESS
          TO JENCKS' MATERIAL

     POINT III........................................................9

          ALL GOVERNMENT LAW ENFORCEMENT OFFICERS ARE
          REQUIRED TO RETAIN ROUGH NOTES OF INTERVIEWS

     POINT IV........................................................10

          THE GOVERNMENT SHOULD BE REQUIRED TO DISCLOSE
          BEFORE TRIAL ANY PRIOR CONDUCT EVIDENCE IT
          INTENDS TO USE AND A PRETRIAL HEARING SHOULD
          BE HELD TO DETERMINE THE ADMISSIBILITY OF
          SUCH EVIDENCE

     POINT V.........................................................14

          THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE
          A WRITTEN SUMMARY OF THE TESTIMONY OF ANY
          EXPERT THE GOVERNMENT INTENDS TO INTRODUCE AT
          TRIAL UNDER RULES 702, 703, AND 705 OF THE
          FEDERAL RULES OF EVIDENCE

     POINT VI........................................................15

          THE COURT SHOULD ORDER THE DISCLOSURE OF CO-
          CONSPIRATORS' ACTS AND HEARSAY STATEMENTS
          WHICH ARE ALLEGEDLY ATTRIBUTABLE TO THIS
          DEFENDANT

POINT VII.................................................18

    DEFENDANT IS ENTITLED TO THE DISCLOSURE OF
    INFORMANTS' IDENTITIES

POINT VIII................................................22

    DEFENDANT'S POST-ARREST STATEMENT SHOULD BE
    SUPPRESSED

POINT IX..................................................24

    THE DEFENDANT SHOULD BE PERMITTED TO JOIN IN
    ALL OTHER DEFENSE MOTIONS WHERE APPLICABLE

POINT X...................................................25

    DEFENDANT SHOULD BE ALLOWED THE RIGHT TO FILE
    ADDITIONAL MOTIONS

CONCLUSION................................................26

## CASES

Brady v. Maryland, 373 U.S. 83 (1963)........................4,9

Dunaway v. New York, 442 U.S. 200, 99 S. Ct. 2248, 60 L.Ed. 824
(1979)......................................................22

Giglio v. United States, 405 U.S. 150 (1972)...................5

Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967),
cert. denied, 390 U.S. 1029 (1968)..........................12

Huddleston v. United States, 485 U.S. 681, 691-92 (1998).......12

In re United States, 565 F.2d 19, 23 (2nd Cir. 1977), cert.
denied 436 U.S. 962 (1978)..................................19

Lainer v. South Carolina, 474 U.S. 25, 26, 106 S. Ct. 297, 298,
88 L.Ed. 23 (1985)..........................................22

Lego v. Towmey, 404 U.S. 477, 92 S. Ct. 619, L.Ed.2d 618
(1972)......................................................22

McRay v. Illinois, 386 U.S. 300, 311-314 (1967)................19

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)......................................................22

Mitchell v. Roma, 265 F.2d 633, 637 (3rd Cir. 1959) ...........20

Napue v. Illinois, 360 U.S. 264 (1959).........................5

Roviaro v. United States, 353 U.S. 53 (1957)..................18

Rugendorf v. United States, 376 U.S. 376 U.S. 528, 534-536 (1964)......................................................19

Taylor v. Alabama, 45 U.S. 687, 690, 102 S. Ct. 2664, 2667, 73 L.Ed.2d 314 (1982)..........................................22

United States v. Agnello, 367 F. Supp. 4444 (E.D. N.Y. 1973)...16

United States v. Alex, 791 F. Supp. 723, 728-29 (N.D. Ill. 1992).............................................11

United States v. Bagley, 473 U.S. 667, 676 (1985)..............5

United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982) .......5

United States v. Berrios, 501 F.2d 1207, 1211 (2nd Cir. 1974) ..20

United States v. Eddings, 478 F.2d 68, 71 (6th Cir. 1973) ......20

United States v. Gallo, 654 F. Supp. 463 (E.D.N.Y. 1987)........6

United States v. Galvis-Valderamma, 841 F. Supp. 600 (D.N.J. 1994)..............................................4

United States v. Gatto, 746 F. Supp. At 475....................6

United States v. Hart, 760 F. Supp. 653 (E.D. Mich. 1991).......6

United States v. Higgs, 713 F.2d 39, 44 n. 6 (3d Cir. 1983).... 7

United States v. Hill, 976 F.2d 132, 134-35 (3d Cir. 1992)......5

United States v. Kaplan, 554 F.2d 577 (3rd Cir. 1977) .........16

United States v. Matlock, 415 U.S. 164, 94 S. Ct. 988, 39 L.Ed.2d 242 (1974)..............................................22

United States v. Sampson, 980 F.2d 883, 886 (3d Cir. 1992)..11,12

iii

<u>United States v. Shifflett</u>, 798 F. Supp. 354 (W.D. Va. 1992)....6

<u>United States v. Starusko</u>, 729 F.2d 256, 262
(3d Cir. 1984).........................................5,6,7

<u>Washington v. Texas</u>, 388 U.S. 14(1967)........................21

**<u>STATUTES</u>**

18 <u>U.S.C.</u> § 3500...........................................6,9

18 <u>U.S.C.</u> 3501 ...........................................22

# **RULES**

Fed. R. Crim. P. 12(b)(1).................................... 4

Fed. R. Crim. P. 16(a)(1)(E)................................14

Fed. R. Evid. 404(b).....................................10,11

Fed. R. Evid. 608(b)........................................10

Fed. R. Evid. 403..........................................11

## **PROCEDURAL HISTORY**

On November 18, 2009 an indictment was filed in the United States District Court, District of New Jersey, charging Defendant, Benjamin Pena, with Conspiracy to Defraud the United States and to Cause the Submission of False Claims, contrary to 18 U.S.C. Section 371, count one; two counts of Submission of False Claims, contrary to 18 U.S.C. Section 287 and 2, counts two and three; Conspiracy to Commit Mail Fraud, contrary to 18 U.S.C. Section 1349, count four; and two counts of Mail Fraud, contrary to 18 U.S.C. Section 1341 and 2, counts five and six.

Defendant was arrested in the District of Arizona on November 19, 2009 and appeared in the United States District Court, District of New Jersey, for an initial appearance and arraignment on December 15, 2009. Not guilty pleas have been entered on behalf of Defendant and he is released under the supervision of Pretrial Services awaiting trial.

## STATEMENT OF FACTS

The following facts are based upon the general allegations set forth in the indictment and discovery that has been provided by the government to date:

Telecommunications Relay Services ("VRS") are required pursuant to the Americans with Disabilities Act ("ADA") in order to provide necessary services to the deaf and hearing impaired individuals in order to permit them to communicate "in a manner that is functionally equivalent to ... voice communications services." VRS is an online video translation service which provides an interpreter via web cameras to assist individuals with hearing disabilities. The hearing disabled person contacts a VRS provider through audio and video internet connection, and the VRS provider employs a Video Interpreter ("VI") to view and interpret on behalf of the hearing disabled individual.

The Federal Communications Committee ("FCC") assesses fees upon all common carriers providing interstate telecommunications services, to fund the services provided by VRS. VRS providers were eligible for reimbursement in exchange for providing the required services to the hearing disabled. VRS providers were authorized by the FCC to receive payment subject to the VRS provider submitting monthly claims and requests for payment along with required documentation.

Viable Communication, Inc., ("Viable") was established in the year 2005. Viable operated call centers, or subcontracted to

others the operation of call centers in various locations throughout the country. It is alleged that Defendant worked as a consultant for Viable and, through fraudulent and illegitimate means, increased the number of VRS minutes billed by Viable. It is further alleged that Defendant employed co-Defendants, Robert Z. Rubeck and Tamara Frankel, to assist in the fraudulent and illegitimate calls billed by VRS.

## LEGAL ARGUMENT

### POINT I

**THE GOVERNMENT SHOULD BE COMPELLED TO PROVIDE DEFENDANT WITH ALL MATERIAL WHICH WOULD EXCULPATE HIM OR MITIGATE HIS CULPABILITY**

The Defendant moves under Fed. R. Crim. Pr. 12(b)(1) and 16 for an order directing the Government to disclose all evidence which is favorable and material to him, including information which would exculpate him or mitigate his culpability. Due process considerations require the Government to disclose evidence favorable to the accused or detrimental to the Government's case. Brady v. Maryland, 373 U.S. 83 (1963). A prosecutor's failure to reveal Brady material may result in the reversal of a defendant's conviction. See, e.g. United States v. Galvis-Valderamma, 841 F. Supp. 600 (D.N.J. 1994).

The Brady holding imposes an affirmative duty on the prosecution to produce, at the appropriate time, requested evidence that is materially favorable to the accused, either as direct or impeaching evidence.[1] Brady is not a rule of

---

[1] Knowledge or possession of exculpatory evidence is imputed to the prosecutor as the agent of the government. The government has constructive knowledge or constructive possession of information when "a prosecutor has no actual knowledge [but] he should nevertheless have known that the material at issue was in existence." United States v. Joseph, 996 F.2nd 36, 39 (3d Cir. 1993), cert. denied, 114 S. Ct. 357 (1993). A prosecutor should know information exists when that information was known to the "prosecution team." United States v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991).

discovery; it is a rule of fairness and minimum prosecutorial obligation. United States v. Starusko, 729 F.2d 256, 262 (3d Cir. 1984). The standard order for discovery and inspection in this district incorporates such a requirement. Furthermore, any doubt as to whether information is Brady material should be resolved in favor of disclosure. United States v. Agurs, 427 U.S. 97, 108 n.4 (1976); United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982).

This requirement of candor by the sovereign includes any information which concerns a witnesses' credibility as well as matters cogent to the guilt or innocence of the accused. United States v. Bagley, 473 U.S. 667, 676 (1985); Giglio v. United States, 405 U.S. 150 (1972); Napue v. Illinois, 360 U.S. 264 (1959). In holding that impeachment evidence falls within the Brady rule, the Court stated,

> [t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that the defendant's life or liberty may depend.

Napue v. Illinois, 360 U.S. at 269. See also United States v. Hill, 976 F.2d 132, 134-35 (3d Cir. 1992).

There can be no question that the right to disclosure under Brady includes the right to pretrial discovery by the defense. Materials must be disclosed to the defendant for their effective use at trial. United States v. Agurs, 427 U.S. 97 (1976). Mr.

Pena submits that due process mandates pretrial disclosure of Brady materials in the present case. Defense counsel must be given sufficient time to evaluate the favorable material and prepare for its presentation at trial. Exculpatory information may lead to potential witnesses or defenses and the need for additional investigation.

The Government's obligation to furnish much of the requested information once trial has begun, pursuant to the Jencks Act, 18 U.S.C. § 3500 (1982), does not absolve the government from providing it at as much earlier date as Brady material. Classification as Jencks Act material does not exempt such material from a pretrial disclosure order based on Brady. If both Brady obligations and the Jencks Act cover certain evidence, Brady governs the timing of the evidence's production. United States v. Starusko, 729 F.2d at 263 (compliance with Jencks Act does not necessarily satisfy due process concerns of Brady); United States v. Gatto, 746 F. Supp. At 475. See also United States v. Shifflett, 798 F. Supp. 354 (W.D. Va. 1992); United States v. Gallo, 654 F. Supp. 463 (E.D.N.Y. 1987). But see United State v. Jones, 612 F.2d 453, 455 (9th Cir. 1979), cert. denied, 445 U.S. 966 (1980); United States v. Hart, 760 F. Supp. 653 (E.D. Mich. 1991).

If the court determines due process does not demand pretrial production, than the defendant requests that the court,

nonetheless, order pretrial disclosure.  The district court may, even when trial disclosure would satisfy due process, order early disclosure of Brady material.  United States v. Higgs, 713 F.2d 39, 44 n. 6 (3d Cir. 1983) ("the district court, within its discretion, may order [pretrial] disclosure to ensure the effective administration of the criminal justice system." (Citations omitted)).  It has been the Third Circuit's "long standing policy" to encourage "early production" of Brady material.  United States v. Starusko, 729 F.2d at 261 (citations omitted).

Accordingly, the Government should be ordered to disclose the information requested.

<u>**POINT II**</u>

**THE DEFENDANT SHOULD BE ALLOWED EARLY ACCESS
TO <u>JENCKS</u> MATERIAL**

The Government has had the benefit of conducting its own investigation in this case without undue time constraints.  If the Court waits until just before or after a witness testifies to require production of <u>Jencks</u> material, the defendant will be denied effective assistance of counsel and, in order to preclude same, the Court may very well have to grant a delay in the trial to allow the defendant to secure additional documents and testimony.

It is submitted that Pena's right to a fair trial and proper adjudication of his guilt or innocence take precedence over the strict application of the <u>Jencks</u> Act.  This Court should grant production of <u>Jencks</u> material prior to the opening statements at trial.

8

## POINT III

### ALL GOVERNMENT LAW ENFORCEMENT OFFICERS ARE REQUIRED TO RETAIN ROUGH NOTES OF INTERVIEWS

As part of his motion, defendant seeks an order requiring all Government law enforcement officers who investigated charges in the instant case to retain the rough notes taken during their investigation. The purpose of this request is to enable the Court to determine whether disclosure of said notes is required under Brady v. Maryland, 373 U.S. 83 (1963), and the Jencks Act, 18 U.S.C. § 3500.

In United States v. Ammar, 714 F.2d 238 (3rd Cir. 1983), the Court held that:

> The rough interview notes of FBI agents should be kept so that the trial court can determine whether the notes should be made available to the defendant as Brady material.

Clearly, the evidence to date reveals that the credibility of certain individuals will lie at the heart of the determination of Pena's guilt or innocence. The Court should grant the defendant's request.

9

## POINT IV

**THE GOVERNMENT SHOULD BE REQUIRED TO DISCLOSE BEFORE TRIAL ANY PRIOR CONDUCT EVIDENCE IT INTENDS TO USE AND A PRETRIAL HEARING SHOULD BE HELD TO DETERMINE THE ADMISSIBILITY OF SUCH EVIDENCE**

The defendant requests an order that requires the Government to disclose prior to trial evidence of any prior conduct which it seeks to use as either impeachment material or as direct proof of illegal conduct.  In addition, the defendant requests a pretrial hearing to determine the propriety of the government's use of such material.

The Federal Rules of Evidence permit the government to offer evidence of other crimes, wrongs or acts to prove a defendant's motives, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.  Fed. R. Evid. 404(b).  The Rules also permit the Government to inquire into prior specific conduct of a witness upon cross-examination if, in the discretion of the Court, such inquiry is probative of truthfulness or untruthfulness.  Fed. R. Evid. 608(b).  The purpose of requesting pretrial disclosure of the government's intentions is to obviate the need for curative instructions, to provide counsel an opportunity to meet the proffered other crimes evidence in the course of its opening remarks to the jury, to weigh the crucial decision as to whether or not an accused should exercise his right to testify, and to allow counsel to

investigate the evidence and effectively prepare for trial.

In 1991, the Supreme Court amended Rule 404(b) adding a pretrial notice requirement.  As amended, the Rule provides that

> upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b) (1991).  Although the Supreme Court did not similarly amend Rule 608(b), the intent of Rule 404(b) pretrial notice provision lends support for early disclosure of Rule 608(b) materials.  See Fed. R. Evid. 404(b), Notes of Advisory Committee Amendment ("intended to reduce surprise and promote early resolution on the issue of admissibility"}.  But see United States v. Alex, 791 F. Supp. 723, 728-29 (N.D. Ill. 1992).  One authority recommends advance rulings so that "attacks on the defendant through bad acts will be limited in order to induce him to the stand..." 3 Jack B. Weinstein & Margaret A. Berger, Weinstenin's Evidence, ¶ 608 [05] at 608-52 (1993).

The Court, in making a determination under either rule, must balance the probative value of the evidence against its prejudicial character.   If its prejudicial character substantially outweighs its probative value, the evidence is inadmissible.  Fed. R. Evid. 403; United States v. Sampson, 980 F.2d 883, 886 (3d Cir. 1992) (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1998)).

11

The primary problem presented by prior bad acts evidence is that it is particularly persuasive on the issue of the defendant's propensity to commit crime, an impermissible use of such evidence. United States v. McGlory, 968 F. 2d 309, 338 (3d Cir. 1992). Courts acknowledge that a jury hearing other crimes evidence, whether it is admitted as circumstantial evidence under Rule 404(b), or for impeachment purposes under Rule 608, is likely to conclude "if he did it before he probably did it this time." See, e.g., Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029 (1968). The prosecution is aware of this likelihood, and "the reasons proffered to admit prior bad act evidence may often be a Potemkin, because the motive...is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character." United States v. Sampson, 980 F. 2d at 886.

If the government intends to introduce evidence of prior acts, or to cross-examine the defendant with respect to "bad acts" or prior convictions, it is respectfully requested that the government be required to disclose its intention prior to trial so that the defendant can have an adequate opportunity to investigate the incidents. Defendant further requests that a pretrial hearing be conducted to determine the propriety of the government's use of any such evidence.

### POINT V

**THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE A WRITTEN SUMMARY OF THE TESTIMONY OF ANY EXPERT THE GOVERNMENT INTENDS TO INTRODUCE AT TRIAL UNDER RULES 702, 703, AND 705 OF THE FEDERAL RULES OF EVIDENCE**

Rule 16 of the Federal Rules of Criminal Procedure provides that should the government intend to seek the introduction in its case in chief of the testimony of an expert under rules 702, 703, and 705 of the Federal Rules of Evidence, it must disclose a written summary of that testimony upon request.  Fed. R. Crim. P. 16(a)(1)(E).  The synopsis must set forth the qualifications of the witness, the opinion of the witness, and the basis and reasons relied upon in support of that opinion.  Id.

13

<u>**POINT VI**</u>

**THE COURT SHOULD ORDER THE DISCLOSURE OF CO-CONSPIRATORS' ACTS AND HEARSAY STATEMENTS WHICH ARE ALLEGEDLY ATTRIBUTABLE TO THIS DEFENDANT**

Under Rule 801(d)(2)(E) of the Federal Rules of Evidence, co-conspirators' statements made during the course of and in furtherance of the conspiracy are not hearsay when offered against a party. Co-conspirators' statements are admissible against, and binding upon, each defendant exactly as though they were his own admissions. Because co-conspirators' statements are attributable to defendants on the central issue of guilt or innocence, such statements must likewise be ascribed to each defendant for purpose of discovery under Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure.

Co-conspirators' statements are tantamount to statements by the defendant himself and, therefore, are discoverable under Rule 16. The government has identified co-defendants as a conspirators. It is not known at this stage what the government will seek to attribute to Pena through the actions and words of the alleged conspirators. Rule 16 does not prohibit the Court from ordering the pretrial discovery of co-conspirators' statements, including the statements of each co-defendant, and any unindicted co-conspirators. Since the defendant in a conspiracy case is likely to be unaware of statements for which he may be held responsible and which may be crucial to his

defense, it is important that pretrial discovery of these statements be granted. Se, United States v. Agnello, 367 F. Supp. 4444 (E.D. N.Y. 1973).

In order to adequately prepare for trial and avoid prejudicial surprise during the trial, the disclosure of this information is required to adequately describe the offense and prepare for the defense. The demand is reasonable and should be granted.

In order to expedite the trial and avoid unnecessary delays and to provide the defendant with an adequate opportunity to evaluate evidence and to file additional appropriate motions, the Court should order early disclosure of any evidence of any "other crimes or wrongs" of the defendants.

Rule 12(d)(2) of the Federal Rules of Criminal Procedure provides as follows:

> At the Request of the Defendant. At the arraignment or as soon thereafter as is practicable the defendant may, in order to afford an opportunity to move to suppress evidence under subdivision (b) (3) of this rule, request notice of the Government's intention to use (in its evidence in chief at trial) any evidence which the defendant may be entitled to discover under Rule 16 subject to any relevant limitations prescribed in Rule 16.

This is not a novel request and is based in part upon the Third Circuit Court of Appeals decision in United States v. Kaplan, 554 F.2d 577 (3rd Cir. 1977), wherein the Court held that

15

it disapproved the prosecutor's practice of delayed production of documents which would inevitably result in trial delays.   An early resolution of disputes will provide all parties with an opportunity to fully prepare their arguments in advance of trial.

<u>**POINT VII**</u>

**DEFENDANT IS ENTITLED TO THE DISCLOSURE OF
INFORMANTS' IDENTITIES**

The Federal Rules of Evidence, Rule 501, states in pertinent part:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, Government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience.

The Sixth Amendment to the United States Constitution states in pertinent part:

> In all criminal prosecutions, the accused shall enjoy the right...to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him...

The formula for reconciling these disparate constitutional and common law interests is found in <u>Roviaro v. United States</u>, 353 U.S. 53 (1957).  The <u>Roviaro</u> Court examined the informant's privilege, describing it as "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." 353 U.S. at 59.  The rationale of this privilege, the Court explained:

> [I]s the furtherance and protection of the public interest in effective law enforcement.   The privilege recognizes the obligations of citizens to communicate their knowledge of the commission of crime to law enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.  <u>Id</u>

The privilege, however, is not an absolute one.

> Where the disclosure of the informer's identity or the contents of his communication is relevant and helpful to the defense of an accused, or is essential to fair determination of a cause, the privilege must give way.  353 U.S. at 60, 61.

Having stated an exception to the privilege arising from "fundamental requirements of fairness," 353 U.S. at 60, the Court declined to adopt any fixed rule, preferring instead a balancing of the public interest on the one hand against, on the other, the individual's "right to prepare his defense."  353 U.S. at 62. Later Supreme Court cases have been underscored the principle that  each case is to be assessed on its own facts. See, <u>McRay v. Illinois</u>, 386 U.S. 300, 311-314 (1967); <u>Rugendorf v. United States</u>, 376 U.S. 376 U.S. 528, 534-536 (1964).

In following the <u>Roviaro</u> lead, courts have pointed out that generalized speculation as to the potential utility of an informer's testimony will usually not defeat the privilege. See, for example, <u>In re United States</u>, 565 F.2d 19, 23 (2nd Cir. 1977), <u>cert.</u> <u>denied</u> 436 U.S. 962 (1978).  Neither is disclosure

18

appropriate simply to permit a fishing expedition. See, for example, United States v. Berrios, 501 F.2d 1207, 1211 (2nd Cir. 1974). The privilege must, however, give way where any of the Roviaro criteria are met. See, e.g., United States v. Silva, 580 F.2d 144, 146 (5th Cir. 1978); Mitchell v. Roma, 265 F.2d 633, 637 (3rd Cir. 1959); see generally, J. Weinstein and M. Berger, Weinstein's Evidence, 510(01)-510(07), 1980 ed. Where the evidence suggests that an informer can give relevant testimony, the burden shifts to the party asserting the privilege to show that the former is not in possession of evidence relevant or material to the defense. United States v. Eddings, 478 F.2d 68, 71 (6th Cir. 1973).

In Roviaro, the Court suggested that the balancing approach to be undertaken should focus on "possible defenses (and) the possibility significance of the informer's testimony." 353 U.S. at 62. In the instant case, the desirability of calling any of the informants as a witness for the defense, or at least of interviewing them for preparation for trial, is a matter for defendant and his counsel, rather than the Government, to decide. Roviaro, supra at 64.

Roviaro discusses the issue of material which is "relevant" to a defense. The Federal Rules of Evidence define "relevant evidence" in the following terms:

19

> 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence. Federal Rules of Evidence, Rule 401.

To permit the Government to withhold the identity of these informants is, in effect, denying the accused the opportunity to defend himself against this alleged criminal activity.  Cf. Washington v. Texas, 388 U.S. 14(1967).  Therefore, it is respectfully requested that the Court order the Government to disclose to the defense the identities of its informants.

20

## POINT VIII

### DEFENDANT'S POST-ARREST STATEMENTS SHOULD BE SUPPRESSED

Pursuant to 18 U.S.C. 3501 and Rule 104(C) of the Federal Rules of Evidence, defendant respectfully requests a hearing on the admissibility of his post-arrest statements. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant denies, however, that he waived his Fourth Amendment right to be free from unreasonable search and seizure. The burden of proof is on the Government to demonstrate waiver, and current federal law suggests a preponderance standard. United States v. Matlock, 415 U.S. 164, 94 S. Ct. 988, 39 L.Ed.2d 242 (1974); Lego v. Towmey, 404 U.S. 477, 92 S. Ct. 619, L.Ed.2d 618 (1972).

Detention for custodial interrogation, regardless of its label, intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest. Dunaway v. New York, 442 U.S. 200, 99 S. Ct. 2248, 60 L.Ed. 824 (1979). The fact that a confession may be "voluntary" for purposes of the Fifth Amendment, in the sense that Miranda warnings were given and understood, is not by itself sufficient to purge the taint of an illegal arrest, Lainer v. South Carolina, 474 U.S. 25, 26, 106 S. Ct. 297, 298, 88 L.Ed. 23 (1985). See also, Taylor v. Alabama, 45 U.S. 687, 690, 102 S. Ct. 2664, 2667, 73 L.Ed.2d 314 (1982).

21

Defendant was initially interviewed by law enforcement agents on September 16, 2009 at his place of business located at 14301 North 83rd Street, Scottsdale, Arizona. In addition to the FBI special agents, also present were two American Sign Language Interpreters. Defendant was not given <u>Miranda</u> warnings and the content of the interview was prepared by FBI special agents in a written report; a signed statement was also given by Defendant. Upon belief that Defendant was not truthful at the time of the September 16th interview, FBI agents returned to Defendant's place of employment on October 30, 2009, along with American Sign Language Interpreters, to speak a second time with Mr. Pena. Again, Mr. Pena was not given <u>Miranda</u> warnings. A second report was prepared by the special agents relative to Defendant's second interview. It is Defendant's position that both statements taken on September 16th and October 30th constituted custodial interrogations in violation of Defendant's Constitutional rights.

## POINT IX

**THE DEFENDANT SHOULD BE PERMITTED TO JOIN IN
ALL OTHER DEFENSE MOTIONS WHERE APPLICABLE**

Defendant respectfully moves for permission to join in motions of co-defendants, where applicable.

## POINT X

**DEFENDANT SHOULD BE ALLOWED THE RIGHT TO FILE ADDITIONAL MOTIONS**

Defendant respectfully moves for permission to reserve the right to file additional motions on the basis of new information as it becomes available to him. Rule 12(f) of the Federal Rules of Criminal Procedure provides specific authority for the Court to permit the filing of motions to dismiss and other challenges to the indictment "for good cause shown." If the Court grants any of the several defense requests for more discovery from the Government, and that discovery tends to exculpate defendant or fails to supply independent evidence of defendant's participation in a conspiracy, defendant respectfully moves the Court to reserve his right to challenge the sufficiency of the indictment.

<u>**CONCLUSION**</u>

For all the foregoing reasons, defendant Benjamin Pena respectfully submits that all his motions should be granted.


Respectfully submitted,


s/ John M. Holliday, Esq.
JOHN M. HOLLIDAY, ESQUIRE
2273 State Hwy. 33, Suite 207
Trenton, New Jersey 08690
Phone No. (609) 587-1010
Attorney for Defendant
Benjamin Pena

Dated: March 10, 2010

25